## FIRST NAT. BANK OF SWEETWATER v. PORTER.

(Court of Civil Appeals of Texas. El Paso. May 23, 1918.)

1. TRIAL ⬤⟳125(5)—ARGUMENT OF COUNSEL.

It was highly improper, in mortgage foreclosure suit, for defendant's counsel to argue that the matter was of little importance to the bank, as plaintiff, but of great importance to defendant, who was a poor widow, having no other property, and that, if the jury did not want the bank to have the property, it should answer a special issue in the affirmative, both because such argument played on the passion and prejudice of the jury, and indicated to the jury the effect of its answers on the special issue.

2. EVIDENCE ⬤⟳471(29) — OPINION — CONSTRUCTION OF CHATTEL MORTGAGE.

In suit to foreclose trust deed, where defendant set up homestead, and the sole issue was whether the land was part of a rural homestead, testimony concerning defendant's understanding of a chattel mortgage should have been excluded as irrelevant.

3. HOMESTEAD ⬤⟳81—ESTABLISHMENT—GOOD TITLE.

Mere fact that mortgagor had not acquired good title to a tract upon which he actually resided did not affect his residence, for the purpose of establishing homestead.

4. HOMESTEAD ⬤⟳13 — URBAN AND RURAL HOMESTEAD.

One person cannot have an urban and a rural homestead at the same time.

5. HOMESTEAD ⬤⟳70 — RURAL HOMESTEAD — EXTENT—DETACHED TRACTS.

The mortgagor is entitled to claim three detached rural tracts as a homestead, if their total acreage is less than 200 acres.

Appeal from District Court, Nolan County; C. E. Dubois, Judge.

Action by the First National Bank of Sweetwater against Martha E. Porter. From a judgment in its favor in part, the Bank appeals. Reversed and remanded.

Beall & Douthit, of Sweetwater, for appellant. J. D. Barker, of Roby, and Woodruff & Woodruff, of Sweetwater, for appellee.

HIGGINS, J. On September 24, 1901, J. M. Porter executed a deed of trust to secure appellant in the payment of his promissory note in sum of $1,000. The deed of trust covered two tracts of land adjoining each other, situate about two miles distant from the village of Hylton, in Nolan county. One of the tracts contained 22 acres; the other, 160 acres. The 160-acre tract was conveyed to Porter on April 14, 1900, and the 22-acre tract was conveyed to him on May 1, 1900.

J. M. Porter died in 1905, and his wife, the appellee herein, qualified as the survivor of the community estate. Said note was renewed by Mrs. Porter from time to time, and on June 30, 1914, the bank filed this suit against her to recover the amount due upon the same, with foreclosure of the deed of trust. The case was submitted to a jury upon special issues, and upon the answers returned judgment was rendered in favor of the bank for the amount of the note, but denying foreclosure of the lien. Foreclosure of the deed of trust was resisted upon the ground that the premises constituted a part of the homestead of Porter when the deed of trust was given. From the judgment rendered, the bank appeals.

Defendant was granted the right to open and conclude the argument, and in the opening argument to the jury, Mr. Barker, one of defendant's counsel, commented upon the fact that plaintiff was a national bank, and the defendant was a poor widow woman and a grandmother, and admonished the jury that it should not take from the poor widow her home, and in order not to do so it would have to answer in the affirmative the issues submitted in the charge; otherwise, they would take her home from defendant and give it to the bank. Plaintiff objected to this argument, whereupon Mr. Woodruff, another counsel for defendant, requested Mr. Barker to withdraw the remarks indicated. Mr. Barker thereupon stated to the jury that he withdrew those remarks. Thereafter Mr. Woodruff, in making the closing argument in the case, stated that this was a matter "of but little importance to the plaintiff, it being a national bank, handling many thousands of dollars, but it was a matter of great importance to the defendant, she being a poor widow woman, and all on earth that she had, and that if they, the jury, wanted to protect the widow woman in her home, and save her home, and not give it to a national banking corporation, that they would have to answer the special issues in the affirmative." To this argument the plaintiff objected, and called the court's attention thereto, and the court failed to take any action in respect thereto.

[1] The argument of both of counsel was highly objectionable, and necessitates a reversal. In the first place, it was an appeal to the passions and prejudices of the jury in favor of an aged widow as against a banking corporation. It is needless to say that such appeals are improper, and if counsel had not expected to profit by such an appeal it would not have been made. In the second place, the argument was objectionable in indicating to the jury the manner in which they should answer the special issues in order that the judgment would be for defendant. Fain v. Nelms, 156 S. W. 281; Railway Co. v. Hodnett, 182 S. W. 7; Patterson v. Bush-

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ong, 196 S. W. 962; Cameron v. Lubbock, 167 S. W. 256. We do not desire to be understood as holding that such intimations to a jury will in all instances constitute reversible error, for in most cases the jury have a very clear idea of the effect of their answers, without being told by counsel. They gather this information naturally during the progress of the trial, and from the argument made by the attorneys for or against the issues. But in the case at bar we think the intimation very improper, and likely to have been prejudicial to the plaintiff's rights, especially in view of the improper appeals also made to passion and prejudice.

Without undertaking to discuss in detail the various assignments presented in the brief, we will indicate our views upon the controlling questions in the case, so that the court may be guided thereby upon retrial.

[2] The only question in this case is whether or not the two tracts of land covered by the deed of trust were a part of a rural homestead of J. M. Porter on September 24, 1901. It therefore follows that all of the testimony about a chattel mortgage on some cattle, and Mrs. Porter's understanding about such mortgage, was irrelevant, and should have been excluded. The same is also true concerning a conversation between Mrs. Porter and Judge Beall. Appellant had pleaded an estoppel against Mrs. Porter to raise the homestead question, and in view of this pleading it is perhaps not in a position to complain of the admission of the testimony about the chattel mortgage and Mrs. Porter's understanding in respect thereto, as such evidence tended to rebut the plea of estoppel. But there is clearly no question of estoppel in the case, and the admission of such testimony simply served to befog the real issues, and divert the mind of the jury to irrelevant matters. As to the conversation between Mrs. Porter and Judge Beall, it was wholly inadmissible for any purpose.

[3] The evidence in this case discloses that Porter, with his wife and children, moved to Hylton about 1890. Hylton was a remote and very small hamlet or village in Nolan county. Porter engaged in the mercantile business, having a very small stock of groceries, etc. He closed out his mercantile business in the fall of 1899 or spring of 1900. When he moved to Hylton, he settled upon and had his residence upon a tract of land containing 7.95 acres, and continued to reside thereon until January, 1902, when he and his family moved to the land involved in this suit. It seems that this 7.95-acre tract was vacant land, and in May, 1890, Porter applied to purchase same as scrap land. It was surveyed upon this application, but for some reason his title thereto was not perfected. He again applied to purchase the land in 1903, and upon this application the land was again surveyed, and finally patented to him in August, 1903. There is evidence in this record to show that the Porters acquired the 22 and 160 acre tracts, intending to make the same their home; that in 1900, and subsequently, they raised crops and a garden upon the land, for the use of the family and by the labor of the family, and, as stated above, actually moved upon it in January, 1902.

Upon the foregoing facts, it is plain that, when the deed of trust to the bank was given on September 24, 1901, Porter's home was on the 7.95-acre tract at Hylton. The fact that he had not at that time acquired good title to the same did not in any wise affect the fact that his home was in fact there situate. So the first and important issue in this case for determination is whether the home upon the 7.95-acre tract was an urban or a rural homestead on September 24, 1901. The evidence will sustain a finding either way, and this issue should be submitted to the jury for its determination.

[4, 5] If it be determined that the home on the 7.95-acre tract was urban, then there is nothing else for the jury to pass upon, as the 22 and 160 acre tracts are rural, and Porter could not have both an urban and rural homestead at the same time. If it be determined that the home upon the 7.95-acre tract was rural, then it is necessary further to determine whether or not there had been such use of the 160 and 22 acre tracts by Porter as would impress the same with the homestead character on September 24, 1901. If the home at Hylton was rural, Porter had the right to treat the detached 160 and 22 acre tracts as a part of the homestead, for the acreage of the three tracts was less than 200. There is an abundance of evidence to show such use of the detached tracts as would have impressed the same with the homestead character at the time the deed of trust was executed. As to the use necessary to impress such character upon detached tracts of a rural homestead, see the following: Baldeschweiler v. Ship, 21 Tex. Civ. App. 80, 50 S. W. 644; Brooks v. Chatham, 57 Tex. 31; Blackwell v. Lasseter, 203 S. W. 619, recently decided by this court, and not yet officially reported.

The two issues indicated are the ultimate and controlling questions in this case, and upon retrial, unless some new issue be injected, the evidence should be confined accordingly, and these are the only issues for submission to the jury. The jury, of course, should have appropriate instructions to guide them in passing upon the same.

Reversed and remanded.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.