## CONNELLY et al. v. JOHNSON et al.
### (No. 7099.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1924.)

**1. Appeal and error ⬀989—Entire record and all evidence examined to sustain charge directing verdict.**

Where the trial court charged the jury to return a verdict for plaintiffs, the Court of Civil Appeals in support of the judgment, which is the court's duty to affirm if it can, must examine the entire record and all evidence introduced, since, if the facts were in dispute, the error was fundamental.

**2. Homestead ⬀67—Test of urban homestead is value of lots.**

In view of Rev. St. art. 3786, an urban homestead is determined, not by the size or number of the lots used for the purposes of the home, but by their value, and it is unimportant whether the homestead is in an incorporated or unincorporated town.

**3. Homestead ⬀62—Rural homestead limited by acreage.**

Under Const. art. 16, § 51, the rural homestead is not limited by value, but by acreage.

**4. Homestead ⬀60—No rural homestead in large area cut into lots unless used as home.**

There can be no rural homestead consisting of a large area of ground cut into lots and blocks in a town or city, unless used for a home, the right to fix homestead character on lots being determined by occupancy and use, and such use cannot be so blended as to make it partake of a rural homestead of 200 acres partly in the town and partly in the country.

**5. Homestead ⬀47—Question of homestead not determined by intention alone.**

The question of homestead or not is to be determined by the obvious facts and use, and not alone by intention, and hence filing of designation is not controlling.

**6. Homestead ⬀60 — Ordinarily, no blending of urban and rural property to make it one homestead.**

Ordinarily, there can be no blending of urban and rural property to make it one homestead.

**7. Homestead ⬀70—Lots may be several miles apart.**

That lots used for the purpose of a home within Rev. St. art. 3786, are several miles apart does not destroy the homestead character.

**8. Homestead ⬀60—"Town or city lot or lots" do not embody farm lots beyond town limits.**

The terms "town or city lot or lots," within Rev. St. art. 3786, as to urban homesteads, do not embody farm lots, where they lie beyond the limits of the town proper, although within jurisdictional limits of the town.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Town Lot.]

**9. Homestead ⬀60—Extent to which homestead may extend over city limits is question of fact.**

There is no constitutional or statutory guide whereby to determine the extent the urban homestead may extend over the line into the country and still be urban, nor when the rural homestead may extend within the city limits and take in area therein and still be rural; such question being one of fact in each particular case.

**10. Homestead ⬀5—Constitution liberally construed to protect homestead rights.**

Liberal construction must be given to effectuate the purpose of the Constitution to protect the homestead rights of families.

Appeal from District Court, Frio County; Covey C. Thomas, Judge.

Suit by Lula L. Johnson and another against R. L. Connelly and another. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

S. T. Dowe, of Pearsall, and J. D. Dodson, of San Antonio, for appellants.

Geo. M. Clifton and Geo. G. Clifton, both of San Antonio, for appellees.

COBBS, J. This suit was brought by appellees against appellants for an injunction to restrain the sale of certain property under execution, situated in the unincorporated town of Moore, in Frio county, known as the Speed addition, described by lots and block numbers.

Appellants first filed a motion to dismiss the temporary injunction, which being overruled, filed their answer.

[1] The case was tried with a jury, and after hearing the evidence the court charged the jury to return a verdict for the appellees, which was accordingly done, and thereupon entered judgment perpetuating the injunction and caused the levy and execution and lien caused thereby to be canceled.

Independent of any other alleged or claimed errors committed by the trial court, the case must be reversed because of fundamental error, unless the whole evidence was uncontradicted that the property was, beyond any disputed fact, the homestead of appellees. This charge requires us, in support of the judgment, which it is our duty to affirm if we can, to examine the entire record and all the evidence introduced on the trial.

The testimony shows that appellees resided in improvements on one side of the unincorporated town of Moore, on approximately 80 acres of land, and while so residing purchased the property upon which the levy was made, lying in the opposite part of the town a distance of at least a quarter of a mile away, not adjacent to the part upon which appellees resided, but entirely separated therefrom. It was platted as a subdivision

---

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the town of Moore, and lots were sold from time to time to purchasers, who made improvements thereon, and in none of such sales by the husband did the wife join. The unsold portion is now under three separate fences; and since appellees' purchase of this property nothing has been done with it to indicate any change of ownership. The only part that appellees have used and cultivated lies on the right-hand side of the railroad track, representing only a part, and that portion west of the railroad track is not in cultivation, and its use has been but occasional. That portion east of the railroad track has been rented at times on shares, and at times farmed by appellee under the direction of his wife.

The town of Moore contains about 300 inhabitants. The land upon which appellees reside, with the improvements, and claimed as a rural homestead, is separated from that upon which the writ of execution is levied, which land so levied upon was acquired subsequent to that upon which the home was actually made. When these lots were acquired, they were represented upon a duly recorded map showing subdivisions of the town of Moore, with blocks, streets, and alleys platted thereupon. Residences are situated upon parts of that subdivision, by which description the appellee has, from time to time, sold lots without the wife's signature; and when lots were so sold the fences inclosing same would be moved back so as to exclude said sold lots. These lots were platted by appellees' vendor, for whom appellee was the agent, and no change was made in their character since the appellees' purchase. They were probably subdivided to go on the market for sale and speculative purposes. Streets are open through the platted addition and are traveled over by the public. Fences are around some of the lots.

The only use appellee Johnson said he made of the property west of the railroad, since he acquired it in 1913, was to use it for a stock pasture for mules, cows, horses, and things; that he had farmed portions east of the railroad track; that he bought the land, consisting of about 120 acres, to finish out a homestead of 200 acres; that at the time of such purchase he owned the 80 acres where his house and residence is, and where he then and now resides with his family; and that he owns about 1,500 acres additional elsewhere, 700 of which is in cultivation. He said he does not know how many acres are in the Speed addition levied on, which he purchased to complete his homestead. His business is cattle business, and from 1915 to 1922, spent nearly all his time in Webb county.

The use of the lots, since his purchase, has not been materially changed. He made improvements thereon, which he says he was not required to make in order to sell out property from the addition.

There is much detailed testimony in the record, concerning its use, etc., for homestead purposes. We shall not discuss the testimony in detail, because the case will have to be retried, and we do not wish to embarrass the parties by any expression of opinion in reference thereto. That function does not belong to the courts, but rather to the juries, unless waived, which it was not.

[2] It is the express contention of appellees in this case that the three tracts of land consisting of a 40-acre tract and a 10-acre tract east of the railroad, and the 60-acre tract west of the railroad, constituted appellees' rural homestead under the provision of article 16, § 51, of the Constitution of Texas. Being in a town, and the property divided in blocks and lots, we can hardly see how it can be called a rural home. Under the provision of the Constitution, "the homestead, not in a town or city, shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon." That is what is called a "rural homestead."

The "homestead in a city, town or village, shall consist of lot or lots, not to exceed in value of $5,000, at the time of their designation as the homestead, without reference to the value of any improvements." This is called an "urban homestead."

The "homestead" is defined by article 3786, R. S., in the same language of the Constitution. The urban homestead is not limited by any number of lots, but is limited by the ground value thereof at the time of designation, not to exceed $5,000, "provided, that the same shall be used for the purposes of a home, or as a place" of "business."

Now, having the definition of a homestead clearly defined by the Constitution, and in mind, it will be observed that it is unimportant whether the urban home be included in an incorporated or unincorporated town or city. Lasseter v. Blackwell (Tex. Com. App.) 227 S. W. 944. The test of an urban homestead is determined, not by the size or number of the lots, but by the value of the lots themselves used for the purposes of the home.

[3, 4] The rural home is not limited by value, but by acreage. Obviously there can be no rural homestead consisting of a large area of ground cut up into lots and blocks in a town or city, unless they are used for the purposes of a home. In other words, it would be of no importance whether such lots extended beyond the supposed limits of the town or not, if they are used as a home (or place of business), making such use as is contemplated by the language of the Constitution that gives the protection to the family. Temporary renting would not affect their homestead character. The right to fix the homestead character upon the lots must be determined by their occupancy and use, and such use cannot be so blended as to make

the same partake of a rural homestead of 200 acres partly in the town and partly in the country. Swearingen v. Bassett, 65 Tex. 267; Iken v. Olenick, 42 Tex. 195; Rogers v. Ragland, 42 Tex. 422; First Nat. Bank v. Walsh (Tex. Civ. App.) 26 S. W. 1113; Lauchenvier v. Saunders, 19 Tex. Civ. App. 392, 47 S. W. 543; Dillard v. Cochran (Tex. Civ. App.) 153 S. W. 662; Harrington v. Mayo (Tex. Civ. App.) 130 S. W. 650. This court has recently expressed itself upon this same subject. See First Nat. Bank of McAllen v. Jones (Tex. Civ. App.) 244 S. W. 1057; Ewing v. Riley (Tex. Civ. App.) 246 S. W. 95.

[5] We do not think because the appellees filed a designation declaring the land to be their homestead is of controlling effect here. The question of homestead or not is to be determined by the obvious facts and use and not alone by the intention. H. & G. N. R. R. v. Winter, 44 Tex. 612; Harris v. Matthews (Tex. Civ. App.) 81 S. W. 1205.

[6] As said in George v. Ryon (Tex. Civ. App.) 61 S. W. 139, citing Iken v. Olenick, 42 Tex. 195, "ordinarily, there can be no blending of urban and rural property to make it one homestead," but that does not mean that in no case it cannot be done. At any rate, the question at last must depend upon proof.

The exact location of appellees' lands, within or without the boundary of the village of Moore, is not defined nor stated; but appellants say in their brief:

"The three tracts involved in this cause are situated about one-half of a mile from appellees' house and across town from it."

Their proposition is: The fact that a homestead is near or even within the limits of a town or village does not determine whether it is rural or urban, and the mere laying out of lands into lots and blocks with streets and alleys platted therein will not deprive the homestead of its rural character, and citing in support of the claim, Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145; Posey v. Bass, 77 Tex. 512, 14 S. W. 156; Cotten v. Friedman (Tex. Civ. App.) 158 S. W. 780.

These cases do not support appellees' contention. The first two are considering homestead rights when, after the residence and occupancy had been fixed, the town was incorporated and the limits extended to take in the outlying residence. The opinion by the Chief Justice of this court in First Nat. Bank v. Jones, supra, makes that issue very clear; besides, the question is not in this case at all. Judge Gaines says in Posey v. Bass, supra:

"Every one is at liberty to make his home in the country although he may do business in town. It is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country it is a rural homestead; if it be in a city it is an urban residence. But it may be said he had a place of business in town which he was entitled to claim as a part of his homestead, and he cannot have both a country and a town homestead. But was his place of business in town exempt? We think not. If he lived in town his place of business would have been a part of his homestead. But since he lived in the country his place of residence was his homestead, and that alone."

The case cited by appellees, of Cotten v. Friedman, supra, in support of their contention, is directly opposed to it. In that case the court says:

"The 100 acres in controversy is situated some 4½ miles from Cotten's residence. He began cultivating it or a part of it about nine years before the trial and continued to do so every year, using the products to support his family. The character of its use has been such as to make it a part of his rural homestead, if he is entitled under the facts to an exemption of a rural homestead, and this depends on whether his residence is situated in a town, city, or village, or in the country. * * *

"Whether the land in controversy was exempt from forced sale depends on whether or not it was a part of appellants' rural homestead, and this depends on whether appellants' residence on the 10-acre tract was an urban or rural homestead. We think the facts, when viewed in the light of the following authorities, were sufficient to take the case to the jury."

The proposition itself, of course, contemplates issues of fact that must be determined by the trial thereof.

The words lots "used for the purpose of a home" apply to urban homesteads. Axer v. Bassett, 63 Tex. 545; Arto v. Maydole, 54 Tex. 244. One is not entitled to a mixed homestead, part urban and part rural. Taylor v. Ullman, Stern & Krause (Tex. Civ. App.) 188 S. W. 746; First Nat. Bank v. Porter (Tex. Civ. App.) 204 S. W. 463; Calvin v. Neel (Tex. Civ. App.) 191 S. W. 791; Bell v. Franklin (Tex. Civ. App.) 230 S. W. 181.

[7] Lots several miles apart do not destroy the homestead character. Brooks v. Chatham, 57 Tex. 33.

[8] The terms "town or city lot or lots" do not embody farm lots where they lie beyond the limits of the town proper, although within the jurisdictional limits of the town.

A blacksmith had a residence on a town lot, and a thousand yards away had 10 acres lying partly in town and partly in the country. On the 10 acres he raised vegetables for his family, it was held they were not exempt. Rogers v. Ragland, 42 Tex. 443; Evans v. Womack, 48 Tex. 232; Andrews v. Hagadon, 54 Tex. 575; Kieth v. Hyndman, 57 Tex. 429.

It is held in Batts v. Middlesex Banking Co., 26 Tex. Civ. App. 515, 63 S. W. 1046:

"Where one resided on a 16-acre tract within a town, adjoining a larger tract used for pasturing, and there was a small farm about the middle of the tract, the homestead could not be extended to any of the tract which lay without the town limits."

The opinion in that case was written by the late Chief Justice James, of this court.

It will be observed, from some of the foregoing cited and quoted authorities, that each case in respect to its homestead character will largely depend upon its own history.

[9, 10] The testimony leaves us in doubt as to whether all the land claimed as a homestead, as well as the homestead itself, are situated within the limits and boundaries of the town of Moore, or partly within and partly without its boundaries. The homestead in the city is limited to the value of the lot or lots at the time of designation, not their size nor area, while that in the country is limited entirely by acreage, and not by value, and there is no constitutional or statutory guide furnished whereby it may be determined mathematically the extent the urban may extend over the line to the country and still be urban and take in acreage, and vice versa, when the rural may extend within the city limits and take in area and still be rural. At last the concrete and fundamental question must be left as a question of fact to determine in each particular case the homestead or place of residence for the family, to the end that the independence and security of the home may be enjoyed without danger of loss by reason of any misfortune or improvidence of any one. Liberal construction must be given to effectuate the purpose and intent of the framers of the Constitution, to protect the homestead right of the families.

For the reasons given, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.